B. C. FROST, executor of Valentine Mutchler, deceased, and ROSE ANN JUDGE, appellants,

*v.*

DAVID MIXSELL, respondent.

1. In an action against the sureties on the bond for the last year of a county collector, who held the office for the preceding year, a settlement made by him with a committee of the board of chosen freeholders on the day, but before the bond was executed, is not evidence against the sureties to prove a balance in his hands at the beginning of his last official year.

2. Where the county officers illegally borrowed money for county purposes by giving notes, and this was received by the collector along with the legal funds of the county, his sureties are not liable for a failure to disburse the

Frost *v.* Mixsell.

borrowed money, but are responsible for the failure to pay over the legally-received funds.

3. When a county collector owes sums both for a preceding as well as the last official year, and after the close of his last year pays to his successor a sum of money less than his entire indebtedness, and there is nothing to show whence the money was derived or whether it was received by him during either of his official years, and no application of the payment is made by either debtor or creditor, the law will apply it to the oldest debt, in the absence of any equity in favor of third parties requiring a different application.

The bill in this cause is filed by David Mixsell, a surety on the bond of Edmund Teel, collector of Warren county, to compel contribution from the executor of a deceased surety.

On appeal from a decree advised by Vice-Chancellor Bird, whose opinion is as follows :

On the 12th day of May, A. D. 1876, Edmund Teel was elected collector of the county of Warren for the third time. On that day he entered into bond with Lewis M. Teel, Jesse F. Carhart, Francis McDermott, Jos. Kramer, P. R. Hagerman, P. W. Skinner, V. Mutchler, David Mixsell and Wm. Silverthorn as sureties, upon the condition that he should faithfully perform the duties of the office of county collector, to which he had been appointed for the term of one year. At the expiration of the year, Edmund Teel, the collector, was indebted to the county $8,597.73. Of this amount he raised and paid to his successor $2,181.62, leaving $6,416.11 unaccounted for.

For this last sum, and the interest thereon, an action was brought against said Edmund Teel and all his sureties. Before judgment, Mutchler and Kramer died. Judgment was finally obtained against all the other bondsmen (of whom complainant was one) for the sum of $5,920.78 debt and $163.26 costs. Execution was issued thereon, but the sheriff returned the same wholly unsatisfied. After this the judgment was assigned to William M. Davis, who paid the whole amount due thereon. The complainant afterwards paid this amount to Davis and took from him an assignment of the judgment. The complainant

alleges that he was obliged to pay the whole amount of the judgment, because all the other sureties still living were insolvent. Kramer had died insolvent. Mutchler had died, but not insolvent. Mutchler left a will, by which he gave several legacies to different persons and directed that $6,000 should be invested and the interest thereof paid to his mother during her life. The defendant B. C. Frost, Esq. is the executor. It appears that after the payment of all demands against the estate, there remains in the hands of the executor the sum of $5,750.36. This is all the money he has with which to satisfy the said legacies, or to invest for the benefit of testator's mother.

It will be perceived this sum is less than the amount ordered to be invested for the mother.

The complainant claims that having paid the amount of the judgment as one of the sureties, he can compel the payment of one-half of that amount from the defendants, being the executor and legatees named in said will.

The suit is against these alone, and no claim is made against any of the other sureties, because they are all insolvent.

Mr. Frost, as executor, and Mrs. Sarah Mutchler, the mother named in the will, insist that if Edmund Teel was liable at all as a defaulter, such liability arose prior to the execution of the bond on which the above-named judgment was obtained. If this were established it would undoubtedly be a good defence. *Patterson* v. *Freehold, 9 Vr. 255; Freeholders of Warren* v. *Wilson, 1 Harr. 110; Farrar* v. *United States, 5 Pet. 373; United States* v. *Linn, 1 How. 104; Bissell* v. *Saxton, 66 N. Y. 55.*

Has this allegation by way of defence been established? It is a fact that on the day this bond was executed and accepted, Edmund Teel, as collector for the prior year, had a settlement with the board of chosen freeholders. He then stated an account with the board, and represented in that account a balance due the county, and in his hands, of a sum nearly equal to the amount found to be due at the expiration of the year, for which judgment was obtained. After this settlement, which was then entered upon the books of the county and became a matter of public record, accessible to all, this bond was executed. These

things being so, the collector having voluntarily made this state-
ment of his accounts, showing a balance in his hands, and having
allowed it to be spread upon the public records, and thus to mis-
lead all who were interested, the fair presumption in law is, that
that statement was true, and it is equally fair to hold that the
burden of proof in such case is with those who charge other-
wise.

To support this view, I again refer to *Freeholders of Warren*
v. *Wilson, 1 Harr. 110 ; Vaughan* v. *Evans, 1 Hill's Ch. 414 ;
State* v. *Sooy, 10 Vr. 539 ; Town of Union* v. *Bermes, 15 Vr.
269 ; Bruce* v. *United States, 17 How. 437.*

I think the defendants have not met this reasonable demand
of the law.   They not only encountered this presumption in the
outset, but also the fact that the statement of accounts seemed to
have been treated as true until long after the action was brought
on the bond.   The proofs offered to show defalcations during
the previous years are not sufficiently clear to found a judgment
upon, and if we were to attempt to discover on which side the
preponderance of testimony is, independent of the accounts, it
would certainly rest with the complainant.   The testimony for
the defendants, taken at its utmost value, suggests doubts, diffi-
culties and uncertainties, but nothing more ; whereas, the testi-
mony for the complainant, including the account and the direct
testimony of Teel, the collector himself, leads the mind to a more
definite conclusion.

It was urged in behalf of the complainant that, in every case
where a public officer makes a statement of his accounts, as was
done in this case, and if a balance appears against him and that
balance is carried forward with his accounts, it becomes dis-
charged by the first payments made by him out of other moneys,
so that the default which attached to the previous year becomes
the default of the succeeding.   If Teel was a defaulter in 1875,
and took the money collected by him when he gave the last bond
and applied it to discharge such default, it is urged that that was
as much a breach of the bond as though he had used it for any
private purpose.   *Morley* v. *Metamora, 78 Ill. 394, 395,* cited to
support this view.   My judgment is, that according to the great

weight of authority this rule is not applied in cases where the previous default is made certain as to circumstances surrounding the default and the particular fund or amount involved. This view, I think, is illustrated by many of the cases already referred to, and especially *Freeholders of Warren* v. *Wilson,* and *State* v. *Sooy.* This very point, I think, is well enforced by the cases of *Town of Union* v. *Bermes, 15 Vr. 269,* and *Bissell* v. *Saxton, 66 N. Y. 55.*

It is next insisted that the board of freeholders expressed a willingness to accept $3,000 and interest, and that it was the duty to pay that amount rather than to take the hazard of an action at law, and that not having done so, he cannot recover of the defendants any part of the excess. This does not seem to me to be reasonable. The complainant was under no greater obligation to pay than any of the other bondsmen. Mr. Mutchler, in his lifetime, and Mr. Frost, as his executor, since his death, were as much bound as the complainant.

Again, it is urged that the complainant and all the other sureties except Mr. Mutchler, held conferences with a view of making arrangements to accept the compromise proposed by the board; and that, although no arrangements were perfected, yet the complainant, in expectation that they would be, obtained title to certain property of Edmund Teel, which was to be applied to this claim; and that it is his duty so to apply the property or the proceeds thereof. If the complainant received any property from any source unconditionally, to be applied to discharge the collector's obligation, the law justly holds him to a most faithful account. The proof is ample that the complainant represented that if the proposed arrangements could be carried out, he could get the title to a lot worth $1,500, and could secure the release of a mortgage thereon for $1,000 held by his mother, who was also the wife of the collector. I can find no statement by any witness that goes beyond this contingency. There is nothing to show that he would undertake to procure a transfer of this property and a release of his mother's claim for the liquidation to the value thereof of this claim, whether the settlement was effected or not.

The complainant did, however, take title to this lot and also

Frost v. Mixsell.

to other lots, and he insists he was not obliged to apply the proceeds of them to this particular claim. He had other claims against Teel, his stepfather; to the payment of these he applied what he realized from the lots.

As I understand the testimony, it is conclusively shown that the true consideration of the conveyance to the complainant, was the payment, or security for the payment, of his individual claims against Teel, other than the claim in question in this suit. If I am right in this, there was no misapplication of the proceeds of the sale of those lots.

I think Mr. Frost, as executor of Valentine Mutchler, should be decreed to pay one-half of the amount of said judgment and costs, with interest, and will advise a decree accordingly. I take not the judgment as the basis, because the judgment was obtained against the other bondsmen, but because the evidence satisfies me that that is the true amount.

*Mr. B. C. Frost* and *Mr. Barker Gummere,* for appellants.

I. The complainant below averred in his bill that William Teel, county collector of Warren county (upon whose official bond for the year beginning May 12th, 1876, and ending May 11th, 187–, the defendant's testator was a surety), had received moneys of that county to the amount of $300,000; and in the next clause, he averred that Teel, at the end of the official year, had in his hands, as such collector, of the moneys so received by him, the sum of $8,597.70. And in the next clause he averred that Teel had paid to his successor in office only the sum of $2,181.62, leaving him and his sureties liable for $6,416.08 upon the official bond.

All these averments are denied by the answer, and the defendant therein demands that the complainant shall maintain them by due proofs.

The burden of the proof of these averments is therefore upon the complainant; he assumed it by the pleadings, and it is essential to his case to prove the truth of the averments by preponderating legal proofs. The vice-chancellor erred in holding that the

defendant was bound to prove the averments to be untrue. *Exeter Bank* v. *Rogers, 6 N. H. 142.*

II. The books of the board of freeholders, or of the collector, containing declarations, or admissions, or transactions antecedent to the delivery of the bond, are not competent evidence as against the sureties on the bond. To every declaration, admission or entry prior to the delivery of the bond, such surety was a stranger; he was not a surety, and there was no privity between them until such delivery.

It is a cardinal principle of all the cases which hold that a surety to an official bond is bound by the admissions of his principal, that such admissions be made during the period in which the officer is doing acts for which the surety is bound.

None of the cases cited by the vice-chancellor assert any other principle; while there is ample authority that admissions of the principal before the relation of principal and surety is established, or after it has ceased, are incompetent as evidence against the surety. *Brandt on Suretyship* § *158 and notes 1–4;* Stetson v. *City Bank, 2 Ohio St. 167; Freeholders of Warren* v. *Wilson, 1 Harr. 110, 117.*

It is submitted that the sureties on the former bond are liable for the deficiency of $6,949.79, being the difference between the balance of $8,598.63 which he ought to have had in the county treasury on May 12th, 1876, and the $1,648.84 which was actually in the treasury at the delivery of the bond. The defalcation occurred during the running of the former bond, and no device can shift the liability from the sureties of that year on to the defendant. *Patterson* v. *Freehold, 9 Vr. 255.*

III. It is a fundamental principle that the undertakings of a surety upon an official bond must receive a strict interpretation both as to time and terms. *Paulison ads. Halsey, 8 Vr. 205, 210.*

By the general law governing the liability of sureties, it is settled that any material change in the duties imposed upon the officer, materially increasing the liability of the surety, and really substituting a new agreement, discharges the surety, although such changed duties be lawfully imposed. I add the following

Frost *v.* Mixsell.

authorities to those cited by my colleague : *Napier* v. *Bruce, 8 Cl. & F. 470 ; Bank* v. *Bruce, 5 U. C. Q. B. (O. S.) 541 ; Crapo* v. *Brown, 40 Iowa 487 ; Blair* v. *Insurance Co., 10 Mo. 550.*

In this case, the collector was made the agent of the board to raise by loan, and keep and disburse nearly $100,000, in addition to his lawful duties existing at the date of the bond.

But, in fact, the raising of this money was not authorized by law—the collector was not charged by law with any duty in respect to it, nor could the freeholders charge him with such duty. He was a pure volunteer in respect to it. The whole transaction was illegal, and the notes were absolutely void. *Hackettstown* v. *Swackhammer, 8 Vr. 191.*

*Mr. William H. Morrow,* for respondent.

On May 12th, 1876, the board of chosen freeholders of Warren county, at its annual stated meeting, elected Edmund Teel to the office of county collector for the term of one year. On that day, Teel, as principal, and complainant, with Mutchler and others, as sureties, entered into a bond in the penal sum of $85,000, conditioned for the faithful performance by Teel of the duties of his office. This bond was approved by the board, and thereupon Teel entered upon the duties of his office. During his official term, from May 12th, 1876, to May 11th, 1877, Teel received from the county, of its moneys, upwards of $300,000, which it was his duty to hold and pay out, according to law, during his term of office ; and, at the end of his term, to pay to the county, or to his successor in office, any balance that might, upon the settlement of his accounts as such county collector, be found remaining in his hands of such money. His term of office ended on the 11th of May, 1877. Then, upon an examination of his accounts by the board at its annual meeting on that day, in settlement of his accounts, it was found that he was indebted to the board in the sum of $8,597.70, which amount he had in his hands as balance due said board of all the moneys received and paid out by him as county collector, which sum of money it was the duty of Teel to forthwith pay over to the county.

After his term had expired, he paid over to his successor in office the sum of $2,181.62, leaving a balance in his hands not paid over amounting to $6,416.08. Complainant and Mutchler and others were jointly and severally bound for the payment by Teel of this last-named sum of money. By reason of the failure of Teel to pay this money, the board brought suit on the bond against the obligors named therein, to recover of them the said sum found to be due as aforesaid (that is, upon the settlement aforesaid), and interest thereon. Mutchler and Kramer died after suit brought. The suit proceeded against the other defendants, and on the 4th of January, 1881, judgment final was entered for $5,920,78 debt and damages, and $163.26 costs. This judgment fixed a liability against the complainant and the other defendants therein to pay the money. The bill alleges the insolvency of all the obligors on the bond save the complainant and the estate of Mutchler.

The insolvency is proved clearly, without reference to the executions or their returns. Complainant has paid the full amount of the judgment. In view of the insolvency of all other sureties on the bond, Mutchler's estate is bound to pay complainant the one-half part of the moneys paid by him. By Mutchler's will he directs his debts to be paid. By law, as well as by this express direction, his personal estate is primarily liable for the payment of the complainant's claim, in exoneration of his real estate. If other legatees have procured payment of their legacies by sale of the real estate, in such a way that Mrs. Mutchler and Mrs. Judge have to bear the entire burden of complainant's claim, that is a matter between those parties; we have no concern with it. There is now in the hands of the executor of Mutchler the sum of $5,750.36, after payment of all the testator's debts.

The answers admit nothing as regards the complainant's claim. They deny only enough to require of the complainant strict proof of the allegations in his bill. It is, however, admitted that the executor has the above-named sum of $5,750.36 in his hands, part of the personal estate of the decedent.

It is said that the default in Teel's accounts occurred in

Frost *v.* Mixsell.

previous years, and that the sureties on his official bonds for those years are alone responsible for the deficit.

There is no proof in the case that Teel was a defaulter at any settlement preceding that of 1877; but, even if he had misused the county funds during the first and second years, it is of no consequence, inasmuch as he used the last year's funds to supply the deficits of the first year's; and this misappropriation of the last year's moneys clearly makes the last year's bond alone responsible.

The question is, not when Teel *began* to be a defaulter, but whether he was, in law, a defaulter during the last year—the year covered by this bond. He certainly did misappropriate some of the county funds during his last year. He kept an account—an official account as county collector—in the Phillipsburg bank. The moneys that went into that account to his credit were moneys of the county. He had no right to use a dollar of that money for his private purposes. He did use parts of that money, unlawfully, by lending it to his friends, who never paid it again, and he also appropriated it to his own use.

I. Bond of Edmund Teel, county collector, received, approved and accepted. It was then that the bond was delivered.

When these sureties delivered this bond to the county, it was with the full knowledge on their part that Teel had just concluded a settlement of his then last year's account, in and by which he represented that there was then in his hands $8,598.63, money belonging to the county of Warren. Then he opened a new account between himself and the county, and the first item in that account is a charge against himself of "balance on hand at last settlement, $8,598.63."

Without regard to any question of appropriation or estoppel (which I shall consider hereafter), this account and settlement show *prima facie* that Teel had this money in hand at the time.

I refer to a single case, *Town of Union* v. *Bermes, 15 Vr. 269,* where the subject is carefully examined.

What was the condition of this bond? "That Teel shall faithfully perform the duties of his office as collector of the

county of Warren, according to law." What were the duties of·
his office? *Rev. p. 130 § 21.* It was to account and pay over.
He accounted, but failed to pay over. Was not the condition
broken and the bond forfeited? I submit that this was an ac-
counting between the collector and the county, and that, in the
absence of any fraud, the result is binding on Teel and on his
sureties. As is said in *Patterson's Appeal, 48 Pa. St. 345*, "The
measure of his responsibility is the measure of theirs."

I refer to cases: *State* v. *Grammer, 29 Ind. 532* ; *Wilmer* v.
*State, 44 Ind. 223* ; *Baker* v. *Preston, Gilm. (Va.) 291* ; *Boone
County* v. *Jones, 54 Iowa 699–701* ; *Morley* v. *Town of Meta-
mora, 78 Ill. 394.*

I might cite many other cases, but in view of the case in our
court, *State* v. *Sooy, 10 Vr. 539, 12 Vr. 401*, it seems to be un-
necessary. *Egremont* v. *Benjamin, 125 Mass. 18, 19* ; *Sand-
wich* v. *Fish, 2 Gray 298.*

II. When this case was before the vice-chancellor, I urged
that even if Teel was a defaulter when he gave this bond, yet if
he applied the moneys by him subsequently received in such a
way as to discharge the default, the last year's bond should be
held liable for the misapplication. And I urged that the man-
ner in which he kept his accounts in his book, and the statement
and settlement he made with the board May 11th, 1877, were
evidence of such misapplication.

I refer to the following cases: Application of payments to a
particular purpose may be evidenced—

*First.* By entries in books of account. *Frazer* v. *Bunn, 8 C.
& P. 704* ; *Simson* v. *Ingham, 2 B. & C. 73.*

*Second.* By an account stated. *Pervis* v. *Roberts, 1 Vern. 34* ;
*United States* v. *Wardwell, 5 Mason 82* ; *United States* v. *Furber,
4 Mason 333* ; *Williamson* v. *Rawlinson, 10 Moore 371*, and cases
cited in *State* v. *Sooy, 10 Vr. 539* ; *Mayor &c.* v. *Patten, Field·
v. Holland, 1 Am. Lead. Cas. 268.* See *McKee's Exr.* v. *Com-
monwealth, 2 Grant 13* ; *Stone* v. *Seymour, 15 Wend. 33.*

*Third.* Application of payments may be made by bringing a·
suit founded on such application.

"The appropriation on the creditors' part may become fixed·

Frost v. Mixsell.

by * * * rendering an account or bringing a suit grounded on a specific appropriation." *1 Am. Lead. Cas. (4th ed.) 278.*

"Bringing suit is an appropriation, for thereby the creditor declares his election to which account he will apply the payment." *Peters* v. *Anderson, 5 Taunt. 596; Allen* v. *Kimball, 23 Pick. 473–475; Upham* v. *Lefavour, 11 Metc. 185.*

The court will see how this money was mingled and used indiscriminately with other moneys which came to his hands.

After making this statement and settlement with the board, would not Teel be estopped from setting up a defence of this kind? Any act of the principal which estops him from setting up a defence personal to himself, operates equally against his sureties. *McCabe* v. *Rainey, 32 Ind. 309; Seaver* v. *Young, 16 Ver. 658; Charles* v. *Hopkins, 14 Iowa 471; Boone County* v. *Jones, 54 Iowa 709; Wylie* v. *Gallagher, 46 Pa. St. 210, 211; Bœhmer* v. *Schuylkill, 46 Pa. St. 454.*

III. It is sought to charge the complainant with the proceeds of certain property conveyed to him by Teel. Part of the arrangement for a settlement was that this property should be conveyed to Mixsell to help the settlement through. The settlement failed. Mixsell then had the property in his hands. I submit that he had a right, independent of any agreement between him and Teel, to apply the proceeds of the sale of the properties to debts due to him alone, in preference to this county debt. On the bankruptcy of a debtor, a creditor can apply any general securities in his hands, or the proceeds of such securities, in whatever manner best suits his own purposes, and even to claims which have arisen after the securities were given. *Ex parte Hunter, 6 Ves. 84; Ex parte Johnson, 3 De G., M. & G. 218.*

There was no agreement on the part of Mrs. Teel that she would give up this mortgage, except that the settlement should be effected. When Mixsell sold this property, it was subject to this mortgage, and when she released the mortgage it was for his benefit, that he might realize the amount for which he had become personally and alone liable for Mr. Teel. If there was no agreement between Mrs. Teel and Mixsell as to what should be

done with the proceeds of the sale, the proceeds belong to her. He was her trustee, and the proceeds of the sale were impressed with the same trust. *Shaler* v. *Trowbridge, 1 Stew. Eq. 599 ; Ferry* v. *Laible, 4 Stew. Eq. 579 ; Pennell* v. *Deffel, 4 De G., M. & G. 372.*

An undoubted principle of equity is, that as between *cestui que trust* and trustee, and all persons claiming under the trustee otherwise than by purchase for valuable consideration without notice, all property belonging to a trust, however much it may be changed or altered in its nature or character, and all the fruit of such property, whether in its original or altered state, continues to be subject to or affected by the trust. *Dyer* v. *Dyer, 1 Lead. Cas. in Eq. (3d ed.) 165–277.*

The opinion of the court was delivered by

REED, J.

On the 12th of May, 1876, the board of chosen freeholders of Warren county, at its annual meeting, elected Edmund Teel to the office of county collector for the term of one year. On that day, Teel, as principal, and Mixsell, the respondent, and Mutchler, the deceased surety, with others, entered into a bond in the penal sum of $85,000, conditioned for the faithful performance by Teel of the duties of his office, and this bond was approved by the board. After the expiration of the term of Teel, a committee appointed to examine his accounts reported that he was indebted to the board of chosen freeholders in the sum of $8,597.70. He afterwards paid $2,181.62, leaving an alleged deficiency of $6,416.08. For the recovery of this amount an action at law was brought by the board of chosen freeholders against Teel and all the sureties upon the bond. After the service of the summons in that action, Mutchler died, and the cause proceeded to a judgment against the surviving defendants for the sum of $5,920.78. This sum was paid by the respondent, as one of the defendants severally liable for the payment of the same. It appears that each of the co-defendants, or their estates, is insolvent, with the exception of the estate of Mutchler,

and this bill is filed to compel the executors of the latter to con-
tribute a moiety of the judgment already paid by the respondent.

The defence interposed to this suit is based upon two proposi-
tions. The first is that the amount which the respondent paid
was not due to the board of chosen freeholders by Teel, and
therefore the sureties of Teel were not legally responsible for
that sum. The second is that during the official year covered
by the bond of the appellant, moneys were illegally borrowed
by the board of chosen freeholders and placed in the hands of
Teel, as collector, to disburse, and that by this act the sureties
were relieved from responsibility for his official acts.

First, then, did Teel fail to pay over the sum of $5,920.78, or
any other amount of money received by him during the year
beginning on the 12th day of May, 1876 ?

It appears that there came to his hands during the year cash
to the amount of $320,803.33. He disbursed during that period
the sum of $320,804.06. In addition to the amount which he
so admittedly received, he was charged in the court of chancery
with a balance from the previous year, during which he held the
same office, of $8,598.63, and it is upon the presence or absence
of this balance in his hands upon the 12th day of May, 1876,
that the contest in this case primarily arises. On the part of the
complainant, it is insisted that Edmund Teel, on the day the
present bond was executed, had a settlement with the board of
chosen freeholders, and his account represented that he owed the
county a balance, the amount of which was the above-named
sum. This, it is insisted, is an admission on the part of Teel
which has probative force against his sureties on the bond for
the year commencing upon the day on which the statement was
made. It is clear, however, that the account was presented and
the settlement concluded before the execution of the latter bond.
The statement was made, therefore, antecedent to the commence-
ment of the performance of his duties of the last year, and as the
concluding act of his previous official term.

The declarations of a principal can only operate as evidence
against a surety when they are made in the performance of the
official duties for which the sureties are bound, or made after the

·execution of an instrument by which principal and sureties became jointly bound for the faithful conduct of the officer. *Town of Union* v. *Bermes, 15 Vr. 269.*

This statement is included in neither of these classes of instances, and it therefore can have no force as evidence against the appellant.

It is next said that a book, known in the case as *Exhibit C,* is evidence that the above balance was in his hands after May 12th, 1876. This book was made after the execution of the bond, and upon page 169 of the account the officer charges himself with the balance on hand at last settlement, namely, the sum of $8,598.63. This is an admission which is admissible against the sureties. The objections urged against the accounts contained in this book, upon the ground that they were loosely kept, or only for the private use of the officer, go only to the probative force of the admissions contained in it, and do not destroy the competency of the book itself as evidence. But, admitting that this statement is evidential on this inquiry, the question remains whether the facts proven in the cause are such as to refute this statement of a cash balance in the hands of Teel on May 12th, 1877. Upon Teel's testimony, taken along with the evidence of the condition of his bank accounts on May 12th, and his previous loans of money at that time unpaid, and other features which characterized his conduct about that time, I have arrived at the conclusion that he did not have the amount of this balance in hand at the time of the commencement of his last official term.

Teel, in his testimony, says that the most of this cash was in the Phillipsburg and Washington banks, some in his safe, and some probably loaned out. All he had in the banks at that date was the sum of $1,649.83. What he had loaned out was not in hand, nor does it appear to have come to hand during the year. He says he had used a part for his personal expenses. The only cash in hand, outside of what was in bank. was in his safe. He does not fix any amount as representing what was in his safe. On May 9th he drew out $400 to go to Belvidere. If he had had that amount in his safe, it is not probable that he would have drawn it from the bank.

Indeed, he still continued to draw upon the Easton bank until May 12th, when his account is drawn down to about $100.

Again, on the 13th of May, he borrows and deposits $5,364.94. If he had had any considerable amount of money in his safe, why did he not use it? He is unable to fix any amount he had in his safe, and the strong probability is that he had little or none. I am clear that the amount of the deposit in the banks represented all that remained in the hands of the officer of the moneys of the preceding year. This sum, as we have seen, amounts to $1,647.91.

This amount would represent the deficit for which his sureties were liable, unless this is extinguished by a payment made by Teel to his successor in office, after the expiration of Teel's term. This sum was $2,181.62. If this payment is applied to the last year of Teel's successive terms, it more than pays the deficit of that year, and relieves the sureties upon that bond entirely.

Had the officer, at the time of payment, made an application of this sum to any particular one of his successive official years, such application, in the absence of any design to defraud sureties of which the county officials were cognizant, would be recognized, and the rights of the sets of sureties would be fixed by the act of the debtor. *State* v. *Sooy, 10 Vr. 539.*

But the amount was paid, generally, upon a balance which represented the financial conclusion of his successive years of office.

Had it appeared that the money which paid this item, was derived from the county revenues which came to the hands of the officer in any particular year, then it would be proper to apply the amount to any balance for that year remaining unpaid. *Postmaster General* v. *Norvell, Gilpin 106.*

And if it had appeared that the money was paid during one of the official years, the *prima facie* inference, I think, would have existed that the fund was derived from the received revenues of that year.

But this money was paid after the close of the last year.

There is no satisfactory evidence to show whence the ex-officer derived the money.

He says that he thinks he paid it out of his bank account, but of what the fund was composed or when deposited does not appear.

In this posture of the cause, the rule seems applicable that the law will apply the payment to the oldest item of indebtedness, in the absence of any circumstance which would render such an application unjust to third parties. *Toulmin* v. *Copland, 2 Cl. & F. 681; Mills* v. *Fowkes, 5 Bing. N. C. 455–461; De Colyer on Guaranties 428.*

The effect of an application of this sum in this manner would leave the sum of $1,647.41, with interest thereon, as the sum due by the collector for the first year.

But it is again argued that the sureties upon his official bond for that year are not responsible for his default, because it appears that a part of the money which Teel received as funds belonging to the county, was borrowed upon notes illegally made in behalf of the board of chosen freeholders. The argument is that inasmuch as the board of chosen freeholders imposed upon Teel the duty of disbursing money which was illegally borrowed, therefore the sureties are discharged from all responsibility for his official conduct.

This contention is grounded upon the rule enunciated in a number of cases in England and this country, to the effect that when a surety's engagement relates to the performance of the duties of a particular office, it applies only to such matters as were included in the office at the time the engagement was entered into, and that when the nature of the office is so changed that the duties are materially altered, so as to affect the peril of the sureties, the bond is avoided. *Pybus* v. *Gibb, 6 El. & B. 902; Oswald* v. *Berwick, 5 H. of L. Cas. 856; Bonar* v. *Macdonald, 3 H. of L. Cas. 226; Leigh* v. *Taylor, 7 B. & C. 491.*

Whether the stringent rule of these cases should be adopted by this court, in view of the case of *Morris Canal and Banking Co.* v. *Van Vorst, 1 Zab. 100,* decided in the supreme court over thirty years ago, it is not now necessary to discuss. It is not necessary, because the facts in the present case do not present an

Frost *v.* Mixsell.

occasion for the application of this rule, if it be admitted to be entirely sound.

In this case there was no change in the extent or character of the duty of Teel while in office.

The law fixed the boundaries of his official conduct. The reception and disbursement of the borrowed money was not an official duty, created after the execution of defendant's bond, but was a transaction outside of the functions of his office. There was no duty thrown upon him to receive or disburse a penny of this money.

Now, I do not perceive upon what principle it can be claimed that, because the principal undertook to perform an extra-official act, his sureties are relieved from responsibility for the manner of his performance of his official duties.

Nor can the fact that this borrowed money was raised at the instance of officers of the county, inasmuch as they were acting outside of any official authority, afford any support to this contention. *Brandt on Suretyship* § *476.*

I am unable to see any plausibility in the argument rested upon this ground, to relieve the sureties from responsibility for the conduct of Mr. Teel in dealing with the moneys which came legally into his official custody.

Indeed, it has been held by the Supreme Court of Pennsylvania that instead of avoiding their bond absolutely, the sureties upon a collector's bond, where money had been illegally borrowed and placed in the hands of such officer by the supervisors of a county, are responsible for his failure to disburse the entire amount. *Franklin* v. *Hammond, 45 Pa. St. 507 ; Wylie* v. *Gallagher, 46 Pa. St. 205 ; Boehmer* v. *County of Schuylkill, 46 Pa. St. 452.*

In these cases it was held that the officer having received the money as county funds he was estopped from denying that he held them for county purposes, and that his sureties occupied the same position.

I think, however, in this regard the sureties do occupy a different position, and that while they are responsible for any act of their principal within the line of his official conduct, they are not

concluded by his admission that he is acting officially in a matter clearly beyond the scope of his official duty.

I conclude, therefore, that for the disbursement of the money which legally came into the possession of Teel, his sureties were liable.

In dealing with the case upon this basis, it is important to ascertain what portion of the last year's deficit results from a failure to disburse this part of the money received.

There is nothing in the testimony by which this can be determined.

The officer intermingled the funds derived from all sources, and payments were made out of the joint fund for all purposes. It is thought equitable to the sureties to deduct from the deficit already found, such sum as bears to it the proportion which the borrowed money bore to the entire amount received by Teel.

This sum, by my computation, is $607.03. Deduct this from $1,647.91, and it leaves as the balance for which these sureties are liable the sum of $1,040.88, with interest upon the same from May 12th, 1877.

I think the decree below should be modified so that the executor of Mutchler shall pay one-half of the above sum, with interest.

*Decree unanimously reversed.*